**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BILLY McCURRIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 CV 3371 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff, Billy McCurrie, has moved for summary judgment, seeking reversal or remand

of the Social Security Administration ("SSA") Commissioner's final decision denying Plaintiff's

claim for Supplemental Security Income ("SSI"). Defendant, Social Security Administration

Commissioner Michael Astrue ("Commissioner"), has filed a cross-motion for summary

judgment, requesting that the Court affirm the Commissioner's final decision. For the following

reasons, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion

for summary judgment, and affirms the Commissioner's final decision.

## PROCEDURAL BACKGROUND

According to the parties, Plaintiff McCurrie applied for SSI on August 16, 2005, alleging

that he became disabled on January 30, 1998.[1] (AR at 208.) The SSA denied his application

initially on October 17, 2005, and upon reconsideration on February 6, 2006. (*Id.* at 106-07.) At

Plaintiff's request, on November 28, 2007, Administrative Law Judge Daniel Dadabo ("ALJ")

---

[1] According to Plaintiff's Application Summary for SSI, however, Plaintiff applied for SSI on September 8, 2005. (Administrative Record ("AR") at 208.)

held a hearing, at which Plaintiff, medical expert Ronald A. Semerdjian ("ME"), and vocational expert Frank M. Mendrick ("VE") testified. (*Id.* at 36-90.) Plaintiff was represented by counsel at the hearing. (*Id.*)

The ALJ issued a decision on January 24, 2008, finding that Plaintiff was not disabled. (*Id.* at 111-19.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since August 16, 2005; (2) had hypertension, lumbar arthritis, and a history of remote trauma and alcohol abuse; (3) did not have an impairment or combination of impairments that met or medically equated to one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) had the residual functional capacity ("RFC") to perform light work, except around unprotected heights, heavy equipment, or operating machinery; (5) had no past relevant work; (6) was 52 years old when he filed the application; (7) had a limited education and was able to communicate in English; (8) had housekeeper, general assembly, and inspector jobs available to him in significant numbers in the national economy; and (9) had not been under a disability since filing the application. (*Id.* at 113-18.) The SSA's Appeals Council denied review of the ALJ's decision on April 23, 2009. (*Id.* at 1-6.)

## FACTUAL BACKGROUND

Plaintiff McCurrie testified at the hearing that he: had elected to get a cane, which he had been using for the preceding four years (*id.* at 41, 75); was unable to work due to pain in his lower back, hand, and leg (*id.* at 42); had difficulty standing and walking (*id.*); could walk about two blocks with his cane before having to sit (*id.* at 42-43); had fallen down approximately twenty times in the preceding six years because his legs went out (*id.* at 43); had difficulty holding objects due to his hand pain (*id.*); had constant pain in his arm (*id.* at 49); had

experienced hand cramping (*id.* at 50); had difficulty in a janitorial job for six months in 2001 (*id.* at 51); required hour-long breaks due to his hand and fingers spreading out (*id.* at 56); wore a back brace (*id.*); and had friends who would help him with household activities (*id.* at 57).

At the ALJ's request, Dr. James P. Elmes performed a consultative examination of Plaintiff on April 24, 2007. Based on the history that Plaintiff provided him, Dr. Elmes reported Plaintiff's history of decreased strength in both legs, inability to lift more than fifteen pounds, and limited ability to sit for more than one continuous hour, walk more than three blocks, stand more than an hour, reach above shoulder height, twist his body, kneel, and squat. (*Id.* at 453-54.)

The ME testified at length regarding Plaintiff's medical history before concluding that Plaintiff could do light work. Specifically, the ME testified that:

> in effect what we're left with is a history of back pain that has been recurrent over the years. The only imaging being two x-rays of the lumbar spine, neither of which show any evidence of fractures but just show degenerative joint disease, which can be consistent with age. The neurologic examination is not really impressive, it's relatively normal by description. So he has back pain but I don't find the listing that it would meet with these findings.

(*Id.* at 65.) He later stated that he did not find any medical impairment that reasonably met one of the Commissioner's listings. (*Id.* at 72.) The ME further stated that, based on the objective evidence, Plaintiff would be able to perform light work. (*Id.* at 73.) If the ME were to consider what Plaintiff had said regarding his history, however, the ME testified that Plaintiff probably could not perform light work. (*Id.* at 73.) The ME also testified that nobody prescribed a cane for Plaintiff. (*Id.* at 75.) With respect to Plaintiff's disk condition, the ME noted that a November 2005 report showed moderate degenerative joint disease and that "it's not unusual to find degenerative changes in the lower back or to find narrowing of, of a space. But the presence of narrowing of a disk space per se does not mean that there is neurologic impairment." (*Id.* 80-

81.)

The vocational expert ("VE") testified that Plaintiff would be capable of performing, among other jobs, housekeeping, general assembly, and simple inspection jobs. (*Id.* at 83-84.) He testified that Plaintiff had available to him over 25,000 housekeeping jobs, over 8,000 general assembly jobs, and 4,500 inspection jobs. (*Id.* at 83-84.) When asked if Plaintiff could perform those jobs if he needed a cane, the VE testified that Plaintiff would not be able to perform the housekeeping work but could perform the assembly and inspection jobs "as long as he doesn't need the cane for standing up straight." (*Id.* at 84.) The VE also testified that, if Plaintiff were limited to carrying fifteen pounds and could stand for up to one hour, Plaintiff would be limited to sedentary work. (*Id.* at 86.) The VE further testified that if Plaintiff could not occasionally use his hands, he would not be able to perform housekeeping, general assembly, and inspection jobs. (*Id.* at 88.)

At the conclusion of the hearing, Plaintiff's counsel indicated that he might ask Cook County Hospital to "do routine testing on [Plaintiff]," and the ALJ responded that Plaintiff's counsel was welcome to submit any additional evidence during the time in which the ALJ was making a decision. (*Id.* at 88-89.) On September 22, 2008, over nine months after the hearing and roughly eight months after the ALJ issued his ruling, Plaintiff underwent an electromyography ("EMG") exam of the cervical spine, which revealed moderate-to-severe narrowing at the C 4-5 disc space, moderate narrowing at the C 6-7 disc space, electrophysiologic evidence of radiculopathy at C 5-6 and L4-S1, and evidence of right median mononeuropathy of the wrist. (*Id.* at 534-37.) Dr. James Dorman summarized the results of this examination in a report ("Examination Report"). On January 16, 2009, Plaintiff, through

counsel, submitted the Examination Report to the Appeals Council. (*Id.* at 531-32.) Plaintiff subsequently submitted evidence to the Appeals Council that he walked with a cane. (*Id.* at 541.)

## LEGAL STANDARD

### I.  Standard of Review

"If the appeals Council denies a request for review, . . . the ALJ's decision becomes the final decision of the Commissioner of Social Security." *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). A reviewing court's role in reviewing an ALJ's decision is "'extremely limited.'" *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

A court will affirm an ALJ's denial of benefits "so long as the decision is not based on legal error and is supported by substantial evidence." *Luster v. Astrue*, No. 09-1132, 2010 WL 21194, at *2 (7th Cir. Jan. 5, 2010); *see also Hopgood v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) (noting that "[t]his is a deferential but not entirely uncritical standard"). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)); *see also Aitken v. Barnhart*, No. 03 C 5354, 2004 WL 785096, at *4 (N.D. Ill. Apr. 12, 2004). Accordingly, "even if reasonable minds could differ concerning whether [one] is disabled, [a reviewing court will] affirm if the ALJ's decision has adequate support." *Simila*, 573 F.3d at 513 (internal quotation omitted). Furthermore, "[t]he ALJ must build an accurate and logical bridge between the evidence and his conclusions." *Luster*, 2010 WL 21194,

at *2. "[I]f the decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood*, 578 F.3d at 698 (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms*, 553 F.3d at 1098. "'An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernible.'" *Simila*, 573 F.3d at 516 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)). An ALJ is not required, however, to discuss or mention every strand of evidence. *Simila*, 573 F.3d at 516-17. "An ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings," and "she need not recontact the source every time she undertakes such an evaluation." *Id.* at 517. A reviewing court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather." *Nelms*, 553 F.3d at 1098.

## II.    Disability Standard

As the Seventh Circuit has explained:

> To qualify for disability benefits, a claimant must be "disabled," which the Social Security Act defines as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

*Liskowitz*, 559 F.3d at 739-40 (quoting 42 U.S.C. §§ 423(a)(1)(E) and 423(d)(1)(A)). "[A] claimant must show that the disability arose while he or she was insured for benefits." *Liskowitz*, 559 F.3d at 740.

"Social Security regulations prescribe a five-step test for determining whether a claimant

is disabled within the meaning of the Act." *Id.*

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If an applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

## ANALYSIS

Plaintiff argues that the Court should remand the ALJ's decision because: (1) there is new, material evidence that was not available to Plaintiff at the time of the hearing, (2) the ALJ erred in rejecting Dr. Elmes' opinion without adequately weighing its relative weight, (3) the ALJ insufficiently assessed Plaintiff's credibility, and (4) the ALJ improperly disregarded Plaintiff's use of a cane.

## I.    New Evidence

"A district court may order that additional evidence be taken before the Commissioner upon a showing that there is 'new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Simila*, 573 F.3d at 522 (quoting 42 U.S.C. § 405(g)). "'New' evidence is that which is 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Simila*, 573 F.3d at 522 (quoting *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997)). For evidence to be material,

there must be "'a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered,'" *Simila*, 573 F.3d at 522 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005)), and the evidence must be "relevant to the claimant's condition 'during the relevant time period encompassed by the disability application under review,'" *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

Plaintiff argues that the Court should remand the case to the Commissioner for consideration of the Examination Report, which Plaintiff claims is material because it "substantiate[s] the intersection of Mr. McCurrie's allegations, Dr. Elmes' opinion, and the medical expert's opinion." (R. 13, Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. at 6.) The Commissioner does not dispute that the Examination Report was new or that Plaintiff had good cause for submitting it late. The Commissioner does argue, however, that the Examination Report is not material because it does not speak to Plaintiff's condition before the ALJ made his decision. (R. 18, Mem. in Supp. of Comm'r's Cross-Mot. for Summ. J. at 8.)

The Examination Report is not material. "Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008). *See also Schmidt*, 395 F.3d at 742 (finding that medical records that post-date the hearing and "'speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration' do not meet the standard for new and material evidence" (quoting *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990), with brackets in original)).

Here, the Examination Report post-dates the ALJ's decision by nearly ten months. Additionally, while it refers to certain of Plaintiff's medical conditions, there is no indication regarding when those conditions materialized. Because the Examination Report speaks only of Defendant's condition in September 2008, it is not material. *See Rasmussen v. Astrue*, No. 07-1771, 2007 WL 3326524, at *4 (7th Cir. Oct. 31, 2007) (refusing to remand for consideration of additional evidence because "these documents describe her health only after the date that the ALJ denied her claim, so they are not material"); *Schmidt*, 395 F.3d at 742 (finding that evidence was not material where "[n]one of the proffered evidence speaks to [the claimant's] condition as it existed at or prior to the time of the administrative hearing."); *Mowery v. Apfel*, No. 99-2974, 2000 WL 12828, at *3 (7th Cir. Jan. 3, 2000) (in addressing a medical evaluation that commenced seven months after the ALJ issued a decision, finding that "evidence suggesting that [claimant's] condition may have deteriorated since the decision denying her application is irrelevant to the question of whether [claimant] was entitled to benefits during the specific period of time considered by the ALJ"); *Hibbard v. Callahan*, No. 96-3125, 1998 WL 93958, at *2 (7th Cir. Mar. 2, 1998) (concluding that "a remand under 42 U.S.C. § 405(g) is not appropriate because the new evidence was not material as it post-dated the ALJ's decision and did not relate back to the relevant time period").

Plaintiff's reliance on *Bush v. Astrue*, 571 F. Supp. 2d 866 (N.D. Ill. 2008), is unavailing. There the evidence sought to be presented "post-date[d] the ALJ's decision by three months or less, and document[ed] impairments of which [the claimant] had been complaining for years." *Id.* at 875. Here, Plaintiff obtained the purportedly new evidence nearly ten months after the ALJ had made his decision, and that evidence speaks only to Plaintiff's then-current condition.

Also unlike *Bush*, there is no indication here that the ALJ may have reached a different conclusion had he considered the Examination Report, even if it did speak to Plaintiff's pre-decision condition. Indeed, the ME testified at the hearing that "it's not unusual to find degenerative changes in the lower back or to find narrowing of, of a space. But the presence of narrowing of a disk space per se does not mean that there is neurologic impairment." (AR 80-81.) Accordingly, the Examination Report does not support a remand. *See Getch*, 539 F.3d at 484.

## II.    Appeals Council

Plaintiff's argument that the Appeals Council committed legal error in refusing to take account of the Examination Report is without merit. (R. 13, Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. at 7-8.) A reviewing court evaluates *de novo* whether the Appeals Council made an error of law. *See Getch*, 539 F.3d at 483. "[A]bsent legal error, however, the Council's decision whether to review is 'discretionary and unreviewable.'" *Id.* at 483-84 (quoting *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997), and noting that "[w]here the Appeals Council considers the new evidence along with the rest of the record and declines to remand because there is nothing before it that undermines the ALJ's decision, we shall not review the Council's discretionary decision"). There is no legal error, and therefore no basis for district court review, where there is no indication that the Appeals Council found new evidence to be either material or immaterial. *See Ross v. Barnhart*, No. 03-4166, 2004 WL 3088685, at *5 (7th Cir. Dec. 22, 2005) (noting also that the "Appeals Council is not required to give any reason for its decision to deny review"); *Damato v. Sullivan*, 945 F.2d 982, 989 (7th Cir. 1991) ([T]he Appeals Council's denial of a request for review is not subject to judicial review and the applicable regulations do not

require an explanation of the grounds for rejection. . . ."); *Bush*, 571 F. Supp. 2d at 873 n.8 (concluding that "the Appeals Council's unexplained denial of Plaintiff's request for review is not judicially reviewable" (citing *Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993)).

Here, the Appeals Council noted that the new evidence "does not provide a basis for changing the Administrative Law Judge's decision." (AR at 2.) The Court cannot review that determination. *See Ross*, 2004 WL 3088685, at *5.

## III.    The ALJ's Rejection of Dr. Elmes' Opinion

Plaintiff further argues that the ALJ inadequately analyzed the conclusions of Dr. James P. Elmes, who examined Plaintiff at the ALJ's request. In his decision the ALJ summarized Dr. Elmes' findings and stated that he was giving "this assessment only limited weight because it is internally inconsistent with the clinical results of examination." (AR at 116.)

An ALJ need not assign controlling weight to a nontreating physician's opinion. *See White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). The ALJ is required, however, "to determine which treating and examining doctors' opinions should receive weight and must explain the reasons for that finding." *Craft*, 539 F.3d at 676 (citing 20 C.F.R. § 404.1527(d) and (f)). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (concluding that an inconclusive opinion is not a proper basis upon which to reject a treating physician's diagnosis).

While Plaintiff takes issue with the ALJ's conclusion that Dr. Elmes' assessment is

internally inconsistent, the ALJ provided an adequate basis for that conclusion in his decision. Specifically, he noted that (1) while Plaintiff had a cane when he saw Dr. Elmes, "Dr. Elmes discerned normal heel-to-toe gait;" and (2) while Plaintiff complained to Dr. Elmes of hand cramping, he "squeezed maximum 55 on the right and 35 on the dominant left." (AR at 115.) The ALJ also summarized the clinical results and noted that the ME (1) commented that Dr. Elmes' assessment was internally inconsistent and (2) "agreed that Dr. Elmes' functional capacities assessment made sense only if one accepted the claimant's subjectively-related history as 'supported.'" (*Id.* at 117.) Dr. Elmes based his conclusions on a history that Plaintiff provided, which the ALJ found to lack credibility.

Furthermore, the ALJ examined Plaintiff's medical history, highlighting that the findings of state agency medical consultants "tend to coincide with the functional rating assigned by [a previous examining doctor] for a restricted range of light work," which the ME "inferred . . . based upon the objective clinical and diagnostic findings." (AR at 117.) The ALJ's explanation is sufficient.

## IV.    Plaintiff's Credibility

Plaintiff next challenges the ALJ's finding that Plaintiff lacked credibility. Specifically, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.* at 115.) The ALJ found it noteworthy that Plaintiff worked after the date of his reported 1990 injury, generally had a poor work history, and had applied for disability benefits two other times. (*Id.* at 116.) As examples supporting his conclusion that Plaintiff was "unreliable," the ALJ noted that

Plaintiff had initially asserted that he had undergone an EMG/NCV, "which he eventually had to admit was untrue, or at least he was uncertain. He also denied any problem with alcohol abuse or going to emergency rooms seeking shelter, even after the [ALJ] brought specific instances to his direct attention." (*Id.* at 116-17.) The ALJ also noted that Plaintiff had (1) provided differing accounts of what caused his back injury and (2) indicated on numerous occasions that he had fractured his spine despite evidence to the contrary. (*Id.* at 117.)

"To evaluate credibility, an ALJ must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Simila*, 573 F.3d at 517 (quoting SSR 96-7p). "In other words, the ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila*, 573 F.3d at 517 (internal quotation omitted).

Courts "afford an ALJ's credibility finding 'considerable deference,'" *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (quoting *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)), because "an ALJ, not a reviewing court, is in the best position to evaluate credibility," *Simila*, 573 F.3d at 513. Accordingly, a reviewing court will reverse an ALJ's credibility determination "only if it is so lacking in explanation or support that [the reviewing court] find[s] it 'patently wrong.'" *Id.* at 517 (quoting *Elder*, 573 F.3d at 413-14); *see also Luster*, 2010 WL 21194, at *3 ("Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported."); *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (finding that a reviewing court "will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence"); *Elder*, 529

F.3d at 414-13 ("It is only when the ALJ's determination lacks any explanation or support that [a reviewing court] will declare it to be patently wrong." (internal quotation omitted)).

The ALJ's credibility determination was not patently wrong. While Plaintiff takes issue with three specific factors that the ALJ considered in making that determination, the ALJ based his credibility assessment on numerous factors. For example, he noted that, although Plaintiff had previously reported a fall-based spinal fracture, Plaintiff worked after the incident that purportedly caused that fracture, provided differing versions of how he was injured, and apparently did not fracture his spine. (AR at 116-17.) Additionally, the ALJ relied on Plaintiff's poor work history and Plaintiff's inconsistent statements regarding his alcohol use and use of emergency rooms for shelter. (*Id.*) With respect to the ALJ's comment regarding the EMG, the ALJ did not say that Plaintiff was lying, but rather that Plaintiff was "unreliable." (*Id.* at 116.) Specifically, the ALJ stated that Plaintiff's testimony regarding the EMG was "untrue" or "uncertain" (*id.* at 116-17), and Plaintiff's testimony shows that he was uncertain regarding the EMG (*see* R. 66-71). Plaintiff, for example, testified that he did not know whether an EMG/NCV was in his medical records or what that testing was. (*See id.* at 70-71.)

The record supports the ALJ's credibility determination. During the hearing, Plaintiff confirmed that he had "denied any real alcohol abuse" to Dr. Elmes (*id.* at 45-46), and when he was asked by the ALJ, Plaintiff denied ever having a problem with alcohol abuse (*id.* at 58). Despite this testimony, the ALJ noted during the hearing that in July 2005 Plaintiff had denied being intoxicated to a physician, when in fact he was intoxicated. (*Id.* at 58.) Additionally, Plaintiff denied having gone to emergency rooms looking for shelter, despite evidence to the contrary. (*Id.* at 59-60.) When asked why there were records indicating that he was "walking

normally without a cane" during hospital visits in 2005, Plaintiff, who had earlier testified that he had used a cane for at least four years (*Id.* at 56), responded, "Sometime I forget it at home, Your Honor.  I wasn't use to it, I wasn't use to walking around with a cane."  (*Id.* at 60.) Furthermore, the ME testified that, while Plaintiff had claimed that he had fractured his spine, x-rays from 2002 and 2005 showed no evidence of any fractures.  (*Id.* at 63-64.)  Finally, the ME noted during the hearing that Plaintiff had provided inconsistent causes for his supposed spinal fractures.  (*Id.* at 65.)  In light of the ALJ's explanation, which is supported by the record, the ALJ did not insufficiently assess Plaintiff's credibility.

## V.       Disregard of Cane Use

Plaintiff further argues that the ALJ improperly ignored Plaintiff's use of a cane in rendering his decision.  "[T]he ALJ need not mention every strand of evidence in her decision but only enough to build an 'accurate and logical bridge' from evidence to conclusion."  *Simila*, 573 F.3d at 517 (quoting *Craft*, 539 F.3d at 673).  Because the record supports that Plaintiff did not need a cane, the ALJ was not required to analyze Plaintiff's cane use in his decision.

After reviewing the record, the ME testified that the objective record did not support the need for a cane and that nobody prescribed a cane for Plaintiff.  (AR 75-76.)  Additionally, Plaintiff's testimony did not establish that Plaintiff needed a cane.  Plaintiff confirmed that he elected to get a cane (*id.* at 75) and testified that he used the cane "[m]ost of the time" when he went for walks (*id.* at 56).  When asked why there were records indicating that he was "walking normally without a cane" during hospital visits in 2005, Plaintiff, who had earlier testified that he had used a cane for at least four years (*id.* at 56), responded, "Sometime I forget it at home, Your Honor.  I wasn't use to it, I wasn't use to walking around with a cane."  (*Id.* at 60.)

Even if Plaintiff needed to use a cane, however, the VE testified that Plaintiff could still perform assembly and inspection jobs "as long as he doesn't need the cane for standing up straight." (*Id.* at 84.) The record indicates that Plaintiff used his cane in case his legs gave out, not to stand up straight. (*Id.* at 56.) Accordingly, Plaintiff's use of a cane, even if necessary, would not have changed the ALJ's decision.

**CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and affirms the Commissioner's final decision.

Dated:  January 25, 2010                          ENTERED:


_____

AMY J. ST. EVE
United States District Court Judge